**Jo SWINDLE, d/b/a Jo's Janitorial Service, Plaintiff/Appellant**

v.

**BIG RIVER BROADCASTING CORP., Sam C. Phillips, Sally Wilbourn a/k/a Sally Phillips, S. Knox Phillips, and Jerry L. Phillips, Defendants/Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

March 20, 1995.

Application for Permission to Appeal Denied by Supreme Court July 10, 1995.

Lanier Fogg, Memphis, for plaintiff/appellant.

Saul C. Belz, and Jennifer W. Sammons, Waring Cox, Memphis, for defendants/appellees.

FARMER, Judge.

Appellant, Jo Swindle ("Swindle"), seeks review of the trial court's judgment in favor of Appellees, Big River Broadcasting Corporation ("Big River"), and the officers and directors of Big River, Sam Phillips, Sally Wilbourn, S. Knox Phillips, and Jerry Phillips.

Swindle presents the following issues for review:

1. The Chancellor's finding that plaintiff's claim was barred by the statute of limitations is contrary to the preponderance of the evidence.

2. The Chancellor's finding that the corporation made adequate provision for the payment of plaintiff's claim was contrary to the weight of the evidence.

3. The shareholders and officers of Big River Broadcasting Corporation owe plaintiff $6,609.16 for her undisputed claim against the corporation.

On December 23, 1981 Swindle and Big River entered into a contract in which Swindle agreed to provide janitorial services for a radio station owned by Big River. A written agreement was signed by Swindle and Big River providing that the cleaning services would be "performed five nights a week for a monthly fee of $300.00 cash and $550.00 trade." Although the term "trade" was not defined in the written agreement, the parties agree that in the radio industry "trade" refers to the practice of exchanging goods or services for advertising time with the station.

In late 1986, Big River sold its assets to Ardman Broadcasting Corporation ("Ard-

man"). In a written agreement reflecting the asset purchase, Ardman agreed to accept and honor all existing "trade" agreements, including Swindle's. The record reveals that Big River was dissolved as of January 7, 1989, having filed a statement of intent to dissolve and articles of dissolution with the Secretary of State. However, Big River did not provide Swindle with a notice of having filed a statement of intent to dissolve as required by the then controlling statute, T.C.A. § 48–1–1004(1) (1984) (repealed 1987)[1].

By letter dated January 9, 1987 Bill Thomas, who was then manager of the radio station, acknowledged that Swindle's trade balance as of that date was $6,609.16. The letter also informed Swindle that the station had been sold to Ardman pending approval by the Federal Communications Commission and that Ardman intended to cancel the station's arrangement with her as of January 31, 1987. Swindle then met with Thomas on January 12, 1987, and January 31, 1987 to renegotiate her contract. The parties were unable to reach an agreement, and the contract was not renewed. During these negotiations, Thomas asked Swindle to use up her trade balance with the station which she would not agree to do.

In June of 1987, Swindle met with Thomas to request that the station allow her to sell her trade balance to John Coveny who intended to sell the air time to third parties. Although he denied her request to sell the trade balance, Thomas continued to provide Swindle the opportunity to use the air time herself.

In September of 1988, Swindle again contacted the station, but this time spoke with the new station manager, Ed Winston. After Winston told Swindle that the station did not owe her air time, Swindle contacted appellee Sam Phillips in an effort to get the station to recognize that it owed her a trade balance. In October or November of 1988, after several conversations with Sam Phillips regarding the trade balance, Swindle wrote Phillips a

1. T.C.A. § 48–1–1004 provided, "After the statement of intent to dissolve is filed by the secretary of state: (1) The corporation shall immediately cause notice thereof to be mailed to each known creditor of the corporation."

letter in which she threatened to take legal action if the matter was not resolved. Swindle filed her suit against Big River and its officers and directors on April 20, 1989 claiming that they owed her the cash equivalent of her trade balance.

The first issue presented by Swindle is whether the trial court correctly ruled that she did not timely file her complaint in this action. At the time of Big River's dissolution, T.C.A. § 48–1–1013(a) (1984) (repealed 1987), provided:

> The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, shareholders or members, for any right or claim existing, or any liability incurred, prior to such dissolution *if action or other proceeding thereon is commenced within two (2) years after the date of such dissolution.* (Emphasis added.)

The trial court held that the statute was a statute of repose, operating as a bar to any claim against the dissolved corporation filed more than two years after dissolution regardless of whether notice was properly given. Alternatively, the court ruled that even if the statute were a typical statute of limitation, the January 9, 1987 letter[2] from Thomas gave Swindle "actual notice that her rights were in jeopardy ... as to put her on notice and commence the running of the statute."

Although Swindle filed her complaint more than two years after Big River was dissolved, she argues that her claim is not barred because Big River did not provide her with notice that it had filed a statement of intent to dissolve as required by T.C.A. § 48–1–1004. Because Big River failed to provide her with this notice, Swindle contends that, *as to her,* the corporation was not dissolved and therefore the two-year limitation period in T.C.A. § 48–1–1013 does not apply to her claim against Big River or its officers and directors. Big River argues that T.C.A. § 48–1–1013 is a statute of repose which operates as an absolute bar to any action commenced more than two years after the date of dissolution. Big River also insists that the January 9, 1987 letter, as well as Swindle's subsequent attempts to contact the radio station and Sam Phillips, indicate that she had discovered that her rights were in jeopardy so as to put her on notice and commence the running of the statute.

■ At common law, a corporation's capacity to sue or be sued terminated upon the corporation's dissolution. 16A William M. Fletcher, *Fletcher's Cyclopedia of the Law of Private Corporations* § 8142 (perm. ed. rev. vol. 1988); *see State v. Bank of Tennessee,* 64 Tenn. (5 Baxter) 101, 108 (1875). Absent a statutory provision such as T.C.A. § 48–1–1013, which was adopted from the Model Business Corporation Act, no suit can be maintained by or against a corporation after dissolution, and must be dismissed. *Fletcher,* § 8144; *Great American Insur. Co. v. Byrd & Watkins Constr., Inc.,* 630 F.2d 460, 461 (6th Cir.1980). However, because of this statutory provision, creditors may continue to pursue their remedies against a dissolved corporation despite its formal nonexistence if the action is commenced within two years from the date of dissolution. *Lottman v. Piper Indus., Inc.,* 726 F.Supp. 384 (N.D.N.Y.1989) (applying Tennessee law, dismissing claim pursuant to T.C.A. § 48–1–1013 which was filed more than two years after dissolution).

---

2. The letter reads as follows:

> Dear Ms. Swindle:
> WEZI/WLVS has been sold to Ardman Broadcasting pending approval by the Federal Communications Commission. We expect this to be completed by late January 1987.
> Please be advised of our intentions to cancel our arrangement for cleaning services, as it currently exists, effective with the conclusion of January 31, 1987. Should you like to restructure or renegotiate a workable arrangement, I will be happy to discuss it with you.
> Again, please be advised of our intentions to cancel the arrangement, as it exists today, effective January 31, 1987. Our records indicate a trade balance owed to you through January of 1987 in the amount of $6,609.16, and a balance of $5,128 that was transferred to Astor Jewelers.
> If you are not in agreement with our records, please advise.
> Thank you very much for you excellent services to date.
> Sincerely,
> Bill Thomas

■ Statutes similar to T.C.A. § 48–1–1013 have been described as survival statutes rather than statutes of limitation. 19 Am. Jur.2d *Corporations* § 2897 (1986) (discussing the provision found in the Model Business Corporations Act). The Supreme Court of South Dakota explained the distinction between a survival statute and a statute of limitations as follows:

[A] statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute. These survival statutes arbitrarily extend the life of the corporation to allow remedies connected with the corporation's existence to be asserted.

*M.S. v. Dinkytown Day Care Center, Inc.,* 485 N.W.2d 587, 589 (S.D.1992) (quoting *Davis v. St. Paul Fire & Marine Insur. Co.,* 727 F.Supp. 549 (D.S.D.1989)). Thus, courts have uniformly held that corporate survival statutes begin to run at the date of dissolution and have dismissed claims initiated outside of the prescribed period. *See e.g., Id.* at 588 (holding that minority tolling statute did not apply to extend time provided under corporate survival statute); *Canadian Ace Brewing Co. v. Anheuser–Busch, Inc.,* 448 F.Supp. 769 (N.D.Ill.1978), aff'd 601 F.2d 593 (7th Cir.1979) (holding allegation of fraudulent concealment did not affect the running of the survival statute). Several courts have nonetheless held that a corporation's failure to comply with the dissolution statutes voids the dissolution as to a creditor whose rights have been prejudiced, thereby permitting the creditor to sue the corporation after more than two years following the date of dissolution. *United States v. SCA Services of Indiana, Inc.,* 837 F.Supp. 946, 952–53 (N.D.Ind.1993); *Soo Line R.R. Co. v. B.J. Carney & Company,* 797 F.Supp. 1472, 1478 (D.Minn.1992); *Alpine Property Owners Ass'n v. Mountaintop Dev. Co.,* 179 W.Va. 12, 365 S.E.2d 57, 64–65 (1987); *South Carolina Dept. of Social Serv. v. Winyah Nursing Homes, Inc.,* 282 S.C. 556, 320 S.E.2d 464, 468 (Ct.App.1984). *Cf. Licht v. Association Serv., Inc.,* 236 Neb. 616, 463 N.W.2d 566, 570 (1990) (holding that where claimant had actual notice of corporate dissolution, limitation period began on date of dissolution despite failure to provide written notice).

■ In the present case, it is undisputed that Big River did not provide Swindle with notice after filing its statement of intent to dissolve. While Thomas' January 9, 1987 letter informed Swindle that Big River's assets had been sold to Ardman, this letter does not satisfy the notice requirement of T.C.A. § 48–1–1004. Information regarding the sale of corporate assets does not equate with a notice that a corporation intends to dissolve. Furthermore, as there is no evidence to indicate that Swindle had actual knowledge that Big River dissolved on January 7, 1987, the evidence preponderates against the trial court's finding that by the end of January, 1987, Swindle knew or should have known that her rights were in jeopardy. Because Swindle was not given notice as required by T.C.A. § 48–1–1004, and was prejudiced as a result, we hold that her suit against Big River and its officers and directors was timely filed.

■ We next address the issue of whether Big River made adequate provision for Swindle's trade balance. Regarding this issue, the trial court stated,

The unequivocal proof demonstrates that the term "trade," as used in the radio industry, is generally accepted as the barter of advertising time to a vendor in exchange for goods or services provided by that vendor. The proof is further to the effect that it is not customary in the radio industry to allow the free transferability of such "trade balances" to unknown third parties and that such a transfer would be the exception rather than the rule. Defendants have carried the burden of persuasion that Plaintiff was given the opportunity by Ardman to use her trade balances for her *own* advertising purposes but declined to do so, repeatedly attempting to *sell* her trade balances to third parties. Plaintiff's testimony was to the effect that she had no interest in personally using her trade balances.

The Court concludes that Plaintiff has failed to carry her burden of proof that she was ever entitled to do anything other than

use her trade balances for her own advertising purposes without the discretionary consent of the radio station, and further concludes that the Defendants have proved that Plaintiff failed and refused to use her trade balances in the form of advertising when the same were offered to her....

The Defendants have demonstrated by a preponderance of the evidence that adequate provision was made for the payment of Plaintiff's claim for trade balance at the time of dissolution of Big River. The contract between the Defendants and Ardman fully assumed the obligation to allow Plaintiff to use her entire trade balance in the form of advertising on WEZI/WLVS.... The contract between the Defendants and Ardman made adequate provision for the payment of Plaintiff's "claim"....

The statute at issue provides that upon filing of a statement of intent to dissolve,

[T]he corporation shall proceed to collect its assets, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy and discharge its liabilities and obligations and do all other acts required to liquidate its business and affairs, and, *after paying or adequately providing* for the payment of all its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders....

T.C.A. § 48–1–1004(2) (1984) (repealed 1987).

In the present case, Big River was obligated by its contract with Swindle to provide advertising air time in exchange for her cleaning services. Although Swindle argues that she is entitled to the cash equivalent to her trade balance with Big River, we are of the opinion that the trial court correctly interpreted the agreement and she was entitled to no more than the opportunity to use the air time with the station. Having made provision in its agreement with Ardman for Swindle to use her trade balance with the new owner, Big River adequately provided for this corporate obligation prior to dissolution as required by T.C.A. § 48–1–1004. *See de St. Aubin v. Johnson*, 151 Ill.App.3d 184, 104 Ill.Dec. 97, 102, 502 N.E.2d 360, 365 (1986) (adequate provision where new entity assumed corporate liabilities).

As to Swindle's third issue, having determined that Big River adequately provided for Swindle's claim, it follows that the officers and directors are also not individually liable on her claim.

The judgment of the trial court is affirmed in part, reversed in part and remanded. Costs of this appeal are taxed against Swindle for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.