Steven A. McNEILL, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–7001.

Court of Appeals of Alaska.

July 30, 1999.

Richard W. Wright, Fairbanks, for Appellant.

Leslie N. Dickson, Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Two state troopers came to McNeill's house to investigate an on-going domestic disturbance between McNeill and his wife. Just as the troopers were about to begin questioning McNeill, he ordered them to "get the hell out" of his house. The troopers refused to leave until McNeill explained what was going on. The primary issue presented in this appeal is whether, under these circumstances, the troopers were obliged to administer *Miranda* warnings to McNeill before they questioned him. As explained below, we conclude that McNeill was not in custody for *Miranda* purposes at this time, and therefore the troopers did not need to advise McNeill of his rights.

*The Miranda issue*

Late in the evening of December 8, 1997, Steven A. McNeill got into a fight with his wife, and his wife called 911. Two state troopers were dispatched to the McNeill residence in response to this call. When they

arrived, McNeill's wife was still on the phone to the 911 dispatcher. Ms. McNeill met the troopers outside the residence and told them that her head hurt; she said that McNeill had thrown his coat at her and that something hard in the coat pocket had struck her in the head. One of the troopers examined Ms. McNeill's head and observed swelling and bruising. Ms. McNeill also told the troopers that, because of her fear of her husband, she had armed herself with a handgun. However, Ms. McNeill then declared that her head injury was the result of an accident and that it was "no big deal".

The troopers decided to speak with McNeill (who was still inside the house). McNeill at first invited the troopers into the house, and he does not claim that their entry constituted a trespass. But McNeill soon reconsidered his decision; he told the troopers to "get the hell out of [his] house and leave [him] alone." Given the circumstances, the troopers refused to leave until they could determine what was going on between McNeill and his wife. The troopers told McNeill, "[We] will [leave] as soon as you tell [us] what's going on."

In the ensuing conversation, McNeill told the troopers that he had "tossed" his coat at his wife, and that a hard object in the pocket (which McNeill identified as "a couple of CD-ROMs") struck his wife in the head. The troopers believed that McNeill might have assaulted his wife, but they nevertheless gave him the option of leaving the house rather than being arrested. McNeill would have none of this; he refused to leave and instead demanded to be arrested. He also insisted that the troopers arrest his wife because she had pointed a gun at him. After the troopers concluded to their satisfaction that McNeill had been the initial aggressor, they arrested him for fourth-degree assault.[1]

McNeill was tried in the district court. In the middle of his trial, McNeill asked District Court Judge Herschel E. Crutchfield to suppress the statements he made to the troopers on the evening of his arrest—in particular, his statement that he had tossed his coat at his wife. McNeill claimed that he had been in custody during his conversation with the troopers, and he argued that his statements should be suppressed because the troopers had not given him *Miranda* warnings.[2]

Because McNeill waited until trial to make this motion, and because he failed to offer any reason for waiting so long to make the motion, McNeill apparently forfeited his right to raise this suppression issue. *See* Alaska Criminal Rule 12(b)(3) and (e). Nevertheless, Judge Crutchfield allowed McNeill to litigate his motion.[3] Following a hearing, the judge concluded that McNeill had not been in custody when he conversed with the troopers; the judge therefore refused to suppress McNeill's statements.

On appeal, McNeill argues that he was obviously in custody, since the troopers suspected him of assaulting his wife and because they refused to leave him alone and get out of his house. But the fact that McNeill may have been the focus of police suspicion does not mean that he was in custody for *Miranda* purposes.[4]

▇▇▇ McNeill points to the fact that the troopers refused to leave his house until he talked to them. Generally, in determining whether a person is in custody for *Miranda* purposes, a court must ask whether, "under the circumstances of the police interaction with the suspect, ... a reasonable person [would] have felt free to break off the interrogation and, depending on the location, either leave *or ask the police to leave*".[5] McNeill relies on this last phrase of the custody test; he contends that he was obviously in custody because the troopers openly refused to leave his house when he asked them to.

---

1. AS 11.41.230(a).

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The State does not challenge this procedural irregularity.

4. *See Beckwith v. United States*, 425 U.S. 341, 346–47, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1, 5 (1976); *Hunter v. State*, 590 P.2d 888, 892–93 (Alaska 1979).

5. *Long v. State*, 837 P.2d 737, 740 (Alaska App. 1992).

But this formulation of the *Miranda* custody test is somewhat inexact. This wording suggests that *Miranda* warnings will be required whenever a person is "seized" for Fourth Amendment purposes, but that is not the law. The cases applying *Miranda* recognize that there are some Fourth Amendment seizures of temporary duration—most notably, routine traffic stops and other investigative stops—in which *Miranda* warnings are not required, even though the person is temporarily in custody and the police can properly ignore a request that the officers depart and leave the person alone.[6]

To the extent that there was a Fourth Amendment seizure in McNeill's case, that seizure was of temporary duration for investigative purposes, and it fell short of *Miranda* custody. The troopers had plenty of reason to intervene at the McNeill household and investigate what was going on. They had come to the McNeills' home in response to Ms. McNeill's 911 call. A domestic disturbance was either ongoing or had just ended. McNeill's wife had suffered a head injury, and she told the troopers that she had armed herself with a handgun. To confuse matters, Ms. McNeill claimed that her husband had injured her accidentally, and that the occurrence was "no big deal". Thus, when the troopers went into the house to speak to McNeill, it was still unclear what had happened. Moreover, the officers could reasonably suspect that the domestic disturbance might continue or escalate if they left without investigating. We hold that, under these circumstances, the troopers were entitled to remain in the house temporarily and question McNeill without giving him *Miranda* warnings.

In reaching this decision, we are mindful of two previous cases in which we held that defendants who were subjected to investigative questioning inside their houses were, in fact, held in custody for *Miranda* purposes. In *Moss v. State*[7] and *Higgins v. State*[8], police officers with guns drawn forcibly entered a residence and maintained control over the people inside the home while the officers conducted a search. Even though the police announced that the defendants were not under arrest, the officers subjected the defendants to lengthy questioning. In both cases, although we conceded that the issue was close, we held that the defendants had been in *Miranda* custody when they were questioned.[9]

McNeill's case is different. The troopers' approach to McNeill was peaceable; they made no show of force, and they gave no other indication that they wished to arrest McNeill or detain him for a lengthy period. Quite the opposite. Although the troopers insisted on finding out "what [was] going on", they actively told McNeill that they did not wish to arrest him. The troopers in fact suggested that, although McNeill might be guilty of assault, they were willing to forego an arrest if McNeill would promise to leave the residence for the rest of the night.

In assessing whether an investigative stop has ripened into *Miranda* custody, we must ask whether, from the point of view of a reasonable person in the defendant's position, "[the] stop' exerts ... pressures that sufficiently impair [the defendant's] free exercise of the privilege against self-incrimination to require that [the defendant] be warned of his constitutional rights".[10] McNeill was not subjected to such pressures. The troopers therefore could question McNeill without giving him *Miranda* warnings.

As an alternative basis for our decision, we also note that the troopers had been called to

---

6. *See Berkemer v. McCarty*, 468 U.S. 420, 439–440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (holding that *Miranda* does not apply when a motorist is subjected to roadside questioning during a routine traffic stop, and indicating that *Miranda* does not apply to investigative questioning during a *Terry* stop); *Blake v. State*, 763 P.2d 511, 514–15 (Alaska App.1988) (holding that police officers are not required to give *Miranda* warnings during an investigative stop unless and until the initial stop ripens into "custody").

7. 823 P.2d 671 (Alaska App.1991).

8. 887 P.2d 966 (Alaska App.1994).

9. *See Moss*, 823 P.2d at 675; *Higgins*, 887 P.2d at 971.

10. *Berkemer v. McCarty*, 468 U.S. at 437, 104 S.Ct. at 3149.

the scene of an ongoing domestic disturbance. McNeill's wife was injured, and she told the troopers that she had armed herself with a handgun because of her fear of her husband. It was still unclear what had happened, or what might happen if the troopers left. Under the "on-the-scene questioning" exception recognized by this court in *McCracken v. State*[11], the troopers' initial request for McNeill to "tell [them] what [was] going on" did not qualify as "interrogation" for purposes of the *Miranda* rule.

Accordingly, we conclude that the district court properly denied McNeill's suppression motion.

*Ms. McNeill's prior consistent statement*

McNeill raises one other issue in this appeal: he claims that he was improperly prevented from introducing hearsay evidence of statements his wife made at his arraignment.

McNeill was arraigned approximately thirteen hours after his arrest. At the arraignment, Ms. McNeill asked that the assault charge against her husband be dropped. She declared that McNeill had not hurt her. She also declared that her head injury had been caused by accident when she was struck by a set of keys in McNeill's coat pocket. According to Ms. McNeill, her husband had not intentionally struck her; rather, she "just happened to be in the way of the coat".

(As explained in the first section of this opinion, Ms. McNeill told this same basic story to the troopers who arrived in response to her 911 call. Specifically, she told the troopers that her head injury was the result of an accident and that it was "no big deal".)

Ms. McNeill was called as a witness at McNeill's trial, and she testified that her husband had not assaulted her. Ms. McNeill explained that she and her husband had been arguing and that her husband, with coat in hand, had gestured with his arm. In making this gesture, Mr. McNeill had "turned loose of the coat", and the coat then collided with Ms. McNeill's head.

To counteract this exculpatory testimony, the prosecutor asked Ms. McNeill a series of questions suggesting that she had altered her account of the incident in order to help her husband's defense. Then, responding to this attack on Ms. McNeill's credibility, McNeill's attorney asked permission to introduce Ms. McNeill's statements at her husband's arraignment as prior consistent statements under Evidence Rule 801(d)(1)(B).

Judge Crutchfield refused to allow the defense to introduce Ms. McNeill's statements at the arraignment. However, the judge did allow defense counsel to elicit testimony (a) that Ms. McNeill had made prior statements about the occurrence, (b) that she made these statements before her husband hired a lawyer to defend him, and (c) that these statements were consistent with her trial testimony.

On appeal, McNeill contends that he should have been allowed to introduce his wife's specific statements from the arraignment. But even if this were true, we conclude that McNeill was not prejudiced by the claimed error. During Ms. McNeill's trial testimony, the jury heard her explain that she had been injured by accident when she was struck by an object in her husband's coat. In addition, one of the two troopers who responded to the 911 call testified that Ms. McNeill had said basically the same thing on the night of the occurrence—that her injury was caused accidentally when her husband tossed his coat at her and she was hit by a hard object in the coat pocket. Thus, the jury was provided with particularized evidentiary support for Ms. McNeill's assertions that she had made prior statements about the incident and that these statements were consistent with her trial testimony.

On this record, we are convinced that even if Judge Crutchfield's ruling was error, that error did not appreciably affect the jury's decision of this case.[12]

11. 914 P.2d 893, 896 (Alaska App.1996). *See also State v. Salit*, 613 P.2d 245, 257 (Alaska 1980); *Beagel v. State*, 813 P.2d 699, 705 (Alaska App.1991).

12. *See Love v. State*, 457 P.2d 622, 631–32 (Alaska 1969) (holding that non-constitutional error will not require reversal of a conviction unless the error "substantially" or "appreciably" affected the verdict).

*Conclusion*

We have concluded that the troopers did not need to give *Miranda* warnings to McNeill. We have further concluded that the jury's verdict was not appreciably affected by any error in the trial court's ruling concerning Ms. McNeill's prior consistent statements. Accordingly, the judgement of the district court is AFFIRMED.