IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 3, 2001 Session

## HARRY T. KRADEL, ET AL. v. PIPER INDUSTRIES, INC., ET AL.

**Rule 23 Certified Questions of Law**
**United States Court of Appeals for the Third Circuit**
**Nos. 99-4069, 00-3146**

---

**No. M2001-00338-SC-R23-CQ - Filed November 27, 2001**

---

Pursuant to Tennessee Supreme Court Rule 23, this Court accepted certification of five questions of law from the United States Court of Appeals for the Third Circuit concerning Tennessee's law of corporations. For the reasons given herein, we answer that the corporate statutes in effect before January 1, 1988, apply to determine the rights and remedies available against a corporation dissolved before that date and that section 48-1-1013(a) (repealed) applies to limit Piper's liability for post-dissolution claims. We further answer that Piper Industries, Inc. did comply with the dissolution statutes in effect before January 1, 1988, which require provisions to ensure the final distribution of corporate assets, but which do not require a corporation to establish a reserve fund for contingent claims arising more than two years after the dissolution. Finally, we answer that while the trust fund doctrine has been previously applied in Tennessee to solvent corporations, its application in this case is necessarily limited by Tennessee Code Annotated section 48-1-1013(a) (repealed).

### Tenn. Sup. Ct. R. 23 Certified Questions of Law

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Matthew L. Kurzweg, Pittsburgh, Pennsylvania, and Donald Capparella, Nashville, Tennessee, for the petitioners, Harry T. Kradel and Marilene Kradel.

Arnd N. von Waldow and Wayne W. Ringeisen, Pittsburgh, Pennsylvania, and Brian Keith Jackson, Nashville, Tennessee, for the respondent, Kent Reynolds, as escrow agent on behalf of the former shareholders of Piper Industries, Inc.

### OPINION

### FACTUAL BACKGROUND

This case arises out of a products liability action brought by Mr. Harry T. Kradel ("petitioner")[1] against several defendants, including Piper Industries, Inc. ("Piper"), a Tennessee corporation that filed Articles of Dissolution in 1986. Following the petitioner's appeal from a grant of summary judgment in favor of the defendants, the United States Court of Appeals for the Third Circuit certified five questions to this Court concerning the application of Tennessee's law of corporations. The relevant facts from which this case arose are summarized in the Certification Order:

1. Harry T. Kradel ("Kradel"), appellant in this action and the party we designate the movant in the certification pursuant to [Tennessee Supreme Court Rule] 23.3(E), sustained serious injuries to his right leg in September 1994 while operating a 1970 model Fox forage harvester with [a] multi-row corn head attachment on his farm in western Pennsylvania.

2. The Fox line of farm equipment was manufactured in 1970 by the Koehring Company ("Koehring"), a Wisconsin corporation. Koehring sold the Fox line of farm equipment to Piper in February 1981. In that transaction, Piper acquired, as an on-going business, all real estate, fixed assets, inventory, sales orders, contracts, trademarks, patents, and other intangible intellectual property of Koehring's farm division. Piper also assumed, pursuant to the agreement, the products liability claims of Koehring for claims arising out of occurrences after the closing date for certain farm division products already sold by Koehring, including the specific product at issue.

3. In 1986, Piper sold certain assets of the Fox line of farm equipment to Hiniker Company ("Hiniker"), a Minnesota corporation, in an agreement that expressly provided for no adoption of liabilities by Hiniker.

4. After its sale to Hiniker, Piper filed a Statement of Intent to Dissolve with the Tennessee Secretary of State ("the Secretary of State") on September 12, 1986. It then filed Articles of Dissolution with the Secretary of State on December 31, 1986. A Certificate of Dissolution was issued by the Secretary of State that same day. In their written consent, Piper's shareholders resolved that Piper's officers would establish a reserve to meet known liabilities, liquidating expenses, estimated, unascertained or contingent liabilities and contingent expenses, if they deemed such a reserve desirable. Piper did not establish a reserve for future, contingent or prospective liabilities because the shareholders did not deem such a reserve desirable.

---

[1] The United States Court of Appeals has also designated the petitioner's wife as a movant in this action. Because Ms. Kradel's claims are derivative of her husband's claims, we will refer only to Mr. Kradel as the petitioner for sake of convenience.

Piper, however, made provisions to satisfy its known or existing claims, debts or liabilities and judgments in any pending suit.

5. Piper's shareholders entered into an agreement on October 31, 1986, by which the company's assets were to be distributed. Assets (including accounts receivable, real property, and promissory notes issued by Hiniker for future payments on its asset purchase) were transferred to an escrow agent to be held and distributed for the benefit of Piper's shareholders. [Kent] Reynolds is currently that escrow agent and he was permitted to intervene in the District Court to assert the defenses of Piper's former shareholders. Hiniker made periodic payments to the escrow agent in fulfillment of its obligations under the Piper-Hiniker agreement, which the escrow agent then distributed to Piper's former shareholders. In both 1990 and 1992, disagreements regarding Hiniker's obligations under the agreement resulted in settlement agreements between Hiniker and Paul P. Piper, acting as trustee for the former shareholders of Piper. Pursuant to these settlements, Hiniker continues to hold $1 million dollars of the asset purchase price that will be distributed to Piper's shareholders upon the conclusion of this litigation. Piper has not held property as a corporate entity or conducted business after December 31, 1986.

6. Kradel filed a products liability action against Piper and other defendants in the Court of Common Pleas for Butler County, Pennsylvania in 1996. Shortly thereafter the case was removed to the United States District Court for the Western District of Pennsylvania. In an Order dated November 15, 1999, the District Court granted Piper's motion for summary judgment. Its opinion . . . held that Piper had lawfully dissolved under the laws of Tennessee in effect in 1986 and as such, under common law principles, could not be sued for tort claims accruing after its dissolution. The Court further held that Piper had no responsibility under the law of Tennessee to provide for unforeseen liabilities, such as Kradel's, and by transferring the right to receive payments to its shareholders, Piper complied with the terms of Tennessee's corporate dissolution statute in effect in 1986. In a footnote, the District Court rejected the argument that Tennessee's "trust fund" doctrine could apply to permit Kradel's recovery of the undistributed assets of Piper's shareholders.

The petitioner then appealed the grant of summary judgment to the United States Court of Appeals for the Third Circuit, and on February 6, 2001, that honorable court certified five questions of law to this Court:

1. What law governs the making of claims arising in 1994 against a corporation which filed Articles of Dissolution in 1986: the law of 1986 or those revisions to the law effective January 1, 1988, Tennessee Code Annotated sections 48-24-101, *et seq.*? More specifically, do the saving provisions of section 48-27-103(a)(2), which state that the repeal of the pre-1988 law does not affect liabilities incurred under the

statute before its repeal, support the contention that a liability incurred after the law's effective date is governed by the 1988 revision?

2.      If the pre-1988 law applied, do the provisions of Tennessee Code Annotated section 48-1-1013(a) (repealed) apply to liabilities incurred after Piper filed Articles of Dissolution, and, if not, does the common law of Tennessee bar such actions?

3.      Did Piper comply with Tennessee Code Annotated section 48-1-1007 (repealed)?  If not, does the manner in which Piper failed to comply invalidate an otherwise lawful dissolution and permit a cause of action accruing eight years after the dissolution was filed?

4.      Do the pre-1988 Tennessee dissolution statutes require provision for unforeseen future liabilities or that the process of asset distribution be final?

5.      Could Kradel's claims proceed under the "trust fund" doctrine, in the absence of corporate insolvency, if other remedies are unavailable to Kradel for the claims against Piper?

We accepted the certification of these questions, and for the reasons given below, we answer that the corporate statutes in effect before January 1, 1988, apply to determine the rights and remedies available against a corporation dissolved before that date and that section 48-1-1013(a) (repealed) applies to limit Piper's liability for post-dissolution claims.  We further answer that Piper did comply with the dissolution statutes in effect before January 1, 1988, which require provisions to ensure the final distribution of corporate assets, but which do not require a corporation to establish a reserve fund for contingent claims arising more than two years after the dissolution.  Finally, we answer that while the trust fund doctrine has been previously applied in Tennessee to solvent corporations, its application in this case is necessarily limited by Tennessee Code Annotated section 48-1-1013(a) (repealed).

## QUESTION I: THE LAW GOVERNING THE PETITIONER'S CLAIMS

The first question certified by the United States Court of Appeals concerns the law applicable to determine the propriety of Piper's dissolution and the scope of the petitioner's remedies available against a dissolved corporation.  The petitioner maintains that the Tennessee corporate statutes in effect at the time of his 1994 injury govern his claim and remedy against Piper, but the respondent asserts that the law in effect at the time of Piper's 1986 dissolution constitutes the controlling authority in this case.

Effective after January 1, 1988, the General Assembly repealed the then-existing Tennessee General Corporation Act ("old act" or "General Corporation Act") and replaced it with the Tennessee Business Corporation Act ("new act"), which was patterned in large part after the Revised Model Business Corporation Act of 1984.  See 1986 Tenn. Pub. Acts ch. 887 (codified as Tenn.

Code Ann. §§ 48-11-101 to 48-27-103). Recognizing that problems could arise in the transition between the old act and the new, the General Assembly enacted chapter 27 of Title 48, which was solely devoted to transition issues. In particular, Tennessee Code Annotated section 48-27-101(e) (1995) addresses the effect of the new act upon previously dissolved corporations, and it provides that the old act "shall apply to any dissolution as to which a statement of intent to dissolve has been filed or a court proceeding filed before January 1, 1988."

"When the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, to say *sic lex scripta*, and obey it." ATS Southeast, Inc. v. Carrier Corp., 18 S.W.3d 626, 630 (Tenn. 2000) (citation and internal quotation marks omitted). Section 48-27-101(e) is clear and plain on its face, and its language can compel only one conclusion: that the old act governs the dissolution of all corporations that filed a statement of intent to dissolve before January 1, 1988. Therefore, because Piper filed its Statement of Intent to Dissolve on September 12, 1986, we conclude that the old act governs the propriety of Piper's dissolution and the scope of the petitioner's remedies against it in this case.

In response, the petitioner cites the "savings provision" of the new act, which provides that the repeal of the old act does not affect "[a]ny ratification, right, remedy, privilege, obligation, or liability acquired, accrued, or incurred under the statute before its repeal." See Tenn. Code Ann. § 40-27-103(a)(2). The petitioner then argues that because the savings provision only addresses claims existing on or before January 1, 1988, the new act must be applied to claims arising after that date. We disagree.

A plain reading of this statute indicates that it seeks only to preserve the then-existing *status quo* respecting any rights or remedies already existing under the old act, and this statute simply does not permit the conclusion that the new act must apply to rights and remedies against corporations that were dissolved under the old act. Moreover, courts do not interpret statutes in isolation, but "are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). To the extent that the petitioner's construction would interfere with Piper's expectations upon its dissolution, it would be contrary to section 40-37-103(a)(4), which provides that the repeal of the old act does not affect "[any] dissolution authorized by the board of directors, under the statute before its repeal, and the . . . dissolution may be completed in accordance with the statute as if it had not been repealed." The petitioner's argument that this case is properly decided under the new act is without merit.

Accordingly, in answer to the first question certified, the General Corporation Act, which was in effect before January 1, 1988, governs the propriety of Piper's dissolution and the scope of the petitioner's remedies available against Piper.

## QUESTION II: THE EFFECT OF TENNESSEE CODE ANNOTATED
## SECTION 48-1-1013(A) (REPEALED) AND TENNESSEE COMMON LAW

Having decided that the provisions of the General Corporation Act govern the petitioner's claims in this case, the next question certified by the United States Court of Appeals is whether Tennessee Code Annotated section 48-1-1013(a) (repealed) limits claims asserted against Piper after it filed its Articles of Dissolution, and, if not, whether Tennessee common law otherwise bars such actions. In relevant part, Tennessee Code Annotated section 48-1-1013(a) (repealed) provides as follows:

> The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its directors, officers, shareholders or members, for any right or claim existing, or any liability incurred, *prior to such dissolution if action or other proceeding thereon is commenced within two (2) years after the date of such dissolution.*

(emphasis added). The petitioner argues that because section 48-1-1013(a) (repealed) does not address post-dissolution claims, this statute cannot bar his 1994 claim against Piper. On the other hand, the respondent maintains that the statute only permits claims that arose before the dissolution and that later arising actions are barred by Tennessee common law.

Because statutes cannot often be properly understood in the abstract, the historical background that gave rise to the statute is often helpful in understanding its intended purpose. Cf. Penley v. Honda Motor Co., Ltd., 31 S.W.3d 181, 186 (Tenn. 2000). The common law of corporations in Tennessee has long held that the dissolution of a corporation ends the legal existence of that corporation. Often referred to as "the civil death of a corporation," the dissolution of a corporation extinguished all "debts due to and from the corporation," and "neither the stockholders nor the directors or trustees of the corporation can recover the debts, or be charged with them in their natural capacity . . . ." See White v. Campbell, 24 Tenn. (5 Hum.) 38, 39 (1844) (citation and internal quotation marks omitted). As a corollary to this principle, "a corporation's capacity to sue or be sued terminated upon the corporation's dissolution." Swindle v. Big River Broad. Corp., 905 S.W.2d 565, 567 (Tenn. Ct. App. 1995).

The unyielding nature of the common law rule would often lead to inequitable results because a corporation could "legitimately dissolve for the sole purpose of eliminating its existing, contingent, and future foreseeable creditor obligations." See Ann E. Conaway Stilson, Reexamining the Fiduciary Paradigm at Corporate Insolvency and Dissolution: Defining Directors' Duties to Creditors, 20 Del. J. Corp. L. 1, 67 (1995). In part to alleviate the harshness of this common law rule, the General Assembly enacted a provision from the Model Business Corporation Act of 1950 ("MBCA"), which provides that a corporation does not cease to exist immediately upon its dissolution. See Swindle, 905 S.W.2d at 567 (acknowledging that section 48-1-1003 (repealed) was derived from the MBCA). Instead, after its formal dissolution, the corporation continues to exist

briefly for the purposes of prosecuting and defending actions in its corporate name. See Tenn. Code Ann. § 48-1-1013(a) (repealed); see also MBCA § 105.

However, as the plain language of section 48-1-1013(a) (repealed) demonstrates, the General Assembly did not intend for a dissolved corporation to otherwise "live" forever for purposes of defending claims against it. Rather, the General Corporation Act expressly limits the types of post-dissolution claims that creditors may assert against a corporation to those claims that (1) arose before the corporation was dissolved, and (2) are brought within two years of the dissolution. Unless a claim satisfies both of these criteria, then it cannot be asserted against a corporation properly dissolved under the since-repealed statute. See id.

Within this context, the petitioner urges this Court to hold that because the statute only addresses pre-dissolution claims, it cannot be read to bar claims against a corporation arising after its dissolution. We disagree and observe that the petitioner's argument ignores that the common law is not displaced by a statute, except to the extent necessarily required by the statute itself. See Lavin v. Jordon, 16 S.W.3d 362, 368 (Tenn. 2000) ("While the General Assembly has plenary power within constitutional limits to change the common law by statute, the '[r]ules of the common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment.'" (citations omitted)). Indeed, in the absence of a clearly contrary intent, courts should presume that the legislature did not intend to change the common law. See Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 599 (Tenn. 1999). As such, we disagree with the petitioner that the General Assembly's failure to mention later arising claims in section 48-1-1013(a) (repealed) reveals an intention to permit these claims contrary to the common law rule.

In addition, cases from other jurisdictions interpreting similar statutory provisions confirm that the savings statute limits Piper's liability in this case.[2] Although other jurisdictions are split as to whether provisions similar to MBCA section 105 prohibit post-dissolution claims, a clear majority has held that suits against a dissolved corporation are permissible only when the claim is one that arose before the dissolution.[3] However, even when post-dissolution claims have been permitted

---

[2] When examining provisions derived from uniform or model acts, we may appropriately use interpretations of similar provisions in other jurisdictions as a guide to interpreting our law. See Holiday Inns, Inc. v. Olsen, 692 S.W.2d 850, 853 (Tenn. 1985); see also In re Estate of Opatz, 554 N.W.2d 813, 816 (N.D. 1996).

[3] See, e.g., Great Am. Ins. Co. v. Byrd & Watkins Constr. Co., 630 F.2d 460, 461 (6th Cir. 1980) (interpreting Tennessee Code Annotated section 48-1014 and concluding that "[t]he statute covers only those claims which have accrued prior to dissolution. It does not specifically relate to claims which arise after dissolution."); Bishop v. Schield Bantam Co., 293 F. Supp. 94, 95 (D. Iowa 1968) ("It is, therefore, quite clear that under the Model Business Corporation Act, and those state statutes patterned after it, a corporation may be sued for predissolution torts only." (citation omitted)); Blankenship v. Demmler Mfg. Co., 411 N.E.2d 1153, 1156 (Ill. App. Ct. 1980) (stating that an identical statute provides "no basis for allowing a cause of action which accrues after dissolution to be brought against a dissolved corporation"); Hunter v. Fort Worth Capital Corp., 620 S.W.2d 547, 552 (Tex. 1981) ("A provision was included to provide creditors with a statutory remedy for pre-dissolution claims. A similar provision could have been included to encompass post-dissolution claims as well. We believe the exclusion of such a provision to be significant."); see also

(continued...)

under provisions similar to MBCA section 105, courts have still required that the claims be brought during the statutory survival period. See Oliver v. American Motors Corp., 616 F. Supp. 714, 716 (E.D. Va. 1985); Naugher v. Fox River Tractor Co., 446 F. Supp. 1281, 1283 (N.D. Miss. 1977).[4] Apparently, the petitioner would have us hold that dissolved corporations "live" forever for purposes of defending later arising claims and, in the process, ignore the fact that he brought his claim a full eight years after the survival period expired. Such an interpretation is not only contrary to the plain language of section 48-1-1013(a) (repealed), it also enjoys no support from any case interpreting provisions similar to MBCA section 105. Consequently, we must conclude that section 48-1-1013(a) (repealed) limits the liabilities to which Piper may be subjected following its dissolution.

Accordingly, in answer to the second question certified, Tennessee Code Annotated section 48-1-1013(a) (repealed) does apply to limit the liabilities incurred by Piper after it filed its Articles of Dissolution.

## QUESTION III: COMPLIANCE WITH THE DISSOLUTION REQUIREMENTS OF TENNESSEE CODE ANNOTATED SECTION 48-1-1007 (REPEALED)

The third question certified by the United States Court of Appeals is whether Piper complied with the dissolution requirements of Tennessee Code Annotated section 48-1-1007 (repealed), and if not, whether any of these deficiencies invalidated Piper's dissolution. Before a corporation was permitted to dissolve voluntarily under the General Corporation Act, it had to certify that it met the various requirements listed in section 48-1-1007(a) (repealed). The failure to follow these requirements "voids the dissolution as to a creditor whose rights have been prejudiced, thereby permitting the creditor to sue the corporation after more than two years following the date of dissolution." Swindle, 905 S.W.2d at 568 (permitting suit after the survival period based upon the corporation's failure to give notice of dissolution). Therefore, if the petitioner can show that Piper failed to follow the corporate dissolution requirements, and that these failures resulted in prejudice to his rights, then Piper's dissolution will be invalidated as to his individual claims.

---

[3] (...continued)
16A William M. Fletcher, Cyclopedia of the Law of Private Corporations § 8144.10 (perm. rev. ed. 1995) (stating that "most courts deciding the [survival] issue have determined that this type of statute [derived from the MBCA] does not allow suits that arise after dissolution"); Green v. Oilwell, Div. of U.S. Steel Corp., 767 P.2d 1348, 1350-51 n.1 (Okla. 1989) ("We note many jurisdictions have patterned their statutes after the 1969 Model Bus. Corp. Act § 105[,] which allowed corporations, [their] officers, directors or shareholders to be sued for pre-dissolution claims only. The 1984 Revised Model Bus. Corp. Act § 14.07 now provides for the commencement of post-dissolution claims within the first five years after published notice of dissolution." (citations omitted)).

[4] The petitioner also cites Continental Insurance Co. v. City of Knoxville, 488 S.W.2d 50 (Tenn. 1972), for the proposition that a corporation cannot avoid its obligations simply by dissolving. We note, however, that Continental Insurance Co. provides no relief for the petitioner, because that case involved a suit that was properly commenced under the savings statute, i.e., one that arose before the dissolution and one that was filed within the two-year survival period. Only under these circumstances will a dissolution not affect the rights and remedies available to the plaintiff. Contrary to the petitioner's arguments, therefore, Continental Insurance Co. does not permit a suit against a dissolved corporation to be filed outside the two-year survival period as set forth in section 48-1-1013(a) (repealed).

To this end, the petitioner alleges that Piper failed to satisfy two dissolution requirements, thereby rendering the attempted dissolution void: (1) a failure to ensure that "all debts, obligations and liabilities of the corporation [were] paid and discharged or that adequate provision has been made therefor," Tenn. Code Ann. § 48-1-1007(a)(3) (repealed); and (2) a failure to ensure that "all the remaining property and assets of the corporation [were] distributed among its shareholders in accordance with their respective rights and interests," Tenn. Code Ann. § 48-1-1007(a)(4) (repealed); see also MBCA § 92. The respondent, on the other hand, alleges that both contested conditions were fully satisfied under the General Corporation Act.

### *Provisions for Unknown, Prospective, or Contingent Claims*

The petitioner first alleges that Piper was required to "adequately provide" for prospective claims, and initially, it appears as though this argument has some merit. Section 48-1-1007(a)(3) (repealed) requires that "all" debts, obligations, and liabilities be paid, discharged, or have adequate provision made therefor. In one recent case, we have held that the term "all liabilities," when used in its plain and ordinary meaning, means exactly what it says: "*all* liabilities." Culbreath v. First Tenn. Bank, 44 S.W.3d 518, 524 (Tenn. 2001) (emphasis in original). Under this interpretation, the phrase "all debts, obligations and liabilities" does encompass prospective debts, obligations, and liabilities, and if so interpreted, then section 48-1-1007(a)(3) (repealed) would require a dissolving corporation to make adequate provision for prospective liabilities.

However, as we stated earlier, statutory provisions cannot be interpreted in isolation and apart from the remaining provisions of the statute. Notably, section 48-1-1007(a)(7) (repealed) requires only that adequate provision be made for lawsuits "pending" at the time of the dissolution, and no requirement can be found regarding lawsuits that may or may not arise in the future. Moreover, in addressing the procedures to be followed after a Statement of Intent to Dissolve is filed, Tennessee Code Annotated section 48-1-1004(1) (repealed) only requires that notice of the dissolution be mailed to each "*known* creditor of the corporation." (emphasis added). One court has held that because this language does not require any type of notice for "prospective" or "foreseeable" creditors, a corporation is not obliged to make provision for these creditors before effecting a proper dissolution under the statute. See Blankenship v. Demmler Mfg. Co., 411 N.E.2d 1153, 1155 (Ill. App. Ct. 1980). Indeed, it appears that requiring a reserve fund for all future lawsuits is unnecessary, because, as we held earlier, the common law barred any suit against a corporation filed more than two years after its dissolution. See Tenn. Code Ann. § 48-1-1013(a) (repealed).

Other states have also held that similar provisions are not intended to require that adequate provision be made for future, contingent, or unknown claims. Rather, the phrase "all debts, obligations, and liabilities" as used in the MBCA applies only to claims existing prior to the dissolution. See Burnett v. Chase Oil & Gas, Inc., 700 S.W.2d 737, 745 (Tex. Ct. App. 1985).[5]

---

[5] The Burnett Court did acknowledge that corporations had to make adequate provisions for "contingent claims," but it interpreted the term "contingent claim" in a narrow sense as being a claim that accrued prior to the
(continued...)

Indeed, while the MBCA requires that the dissolving corporation certify that it has discharged all debts and obligations or has made adequate provision therefor, the MBCA

> *does not require that provision be made for prospective liabilities that might foreseeably arise*, *such as product liability claims.* Furthermore, the provision requiring a certificate that there are no suits pending against the corporation in any court, or that adequate provision has been made for the satisfaction of any judgment, order or decree which may be entered against it in any pending suit *does not require that provision be made for any suit that might be filed in the future.*

See 19 Am. Jur. 2d Corporations § 2879 (1986) (emphasis added). Finally, as at least one academic commentator has noted, the failure of the MBCA to require provisions for contingent or prospective claims arising after a dissolution was a primary motivation leading to the Revised Model Business Act of 1984, which expressly makes a distinction between known and unknown creditors. See James P. Connolly, The Post-Dissolution Products Liability Claim Problem: A Statutory Versus a Judicial Solution, 38 Syracuse L. Rev. 1279, 1291 (1987); see also RMBCA § 14.07; Tenn. Code Ann. § 48-24-107 (1997). Therefore, presuming that the drafters of the MBCA did not intend to require that adequate provisions be made for prospective liabilities—and we see no evidence to the contrary—we are reluctant to hold that the General Assembly somehow intended a different meaning through its use of the model act's language. See Armstrong v. Pilot Life Ins. Co., 656 S.W.2d 18, 28 (Tenn. Ct. App. 1983).[6] Accordingly, we conclude that Piper's dissolution complied with Tennessee Code Annotated section 48-1-1007(a)(3) (repealed).

*Final Distribution of Corporate Property*

The petitioner next asserts that Piper failed to make proper provisions for the final distribution of its property. However, while Tennessee Code Annotated section 48-1-1007(a)(4) does require a corporation to ensure that "all the remaining property and assets of the corporation are distributed among its shareholders in accordance with their respective rights and interests," the

---

[5] (...continued)
dissolution, but which still awaits litigation. See 700 S.W.2d at 745.

[6] See also, e.g., Universal Motors, Inc. v. Neary, 984 P.2d 515, 517 (Alaska 1999) ("In construing statutes taken from model acts we generally regard the commentary to the model act as a reliable guide to the statute's meaning."); In re Estate of Dobert, 963 P.2d 327, 331 (Ariz. Ct. App. 1998) ("When a statute is based on a uniform act, we assume that the legislature 'intended to adopt the construction placed on the act by its drafters.' Thus, commentary to such a uniform act is 'highly persuasive unless erroneous or contrary to settled policy in this state.'" (citations omitted)); In re Nocita, 914 S.W.2d 358, 359 (Mo. 1996) ("When 'construing uniform and model acts enacted by the General Assembly, we must assume it did so with the intention of adopting the accompanying interpretations placed thereon by the drafters of the model or uniform act.'" (citations omitted)); Clymer v. Summit Bancorp, 758 A.2d 652, 653 (N.J. Super. Ct. App. Div. 2000) ("In the absence of a contrary design, clearly articulated, the Legislature is taken to have adopted the expressed intention of the uniform act drafters."); In re Margaret Susan P., 733 A.2d 38, 47 (Vt. 1999) ("We are reluctant to conclude, however, that when the Legislature uses model language it does so for a purpose different from the purpose in the model act.").

petitioner's claim that Piper did not satisfy this requirement is directly contradicted by the factual findings submitted by the United States Court of Appeals. These findings clearly state that "Piper has not held property as a corporate entity or conducted business after December 31, 1986." Nevertheless, because the United States Court of Appeals has specifically inquired as to the propriety of Piper's dissolution under Tennessee law, we undertake a more thorough analysis on this point.

Although not directly stated, the petitioner seems to argue that because the former shareholders of Piper have not received all of the corporate property—Piper was owed money after its dissolution, which, when received, was placed in escrow for the benefit of the shareholders—the dissolution has yet to be completed. We disagree. The statute does not require that Piper's shareholders actually receive all of the corporate property in hand before the Articles of Dissolution were filed; it only requires that the property be distributed "in accordance with their respective rights and interests." Because the accounts receivable from Hiniker were not due and payable at the time of Piper's dissolution, the shareholders possessed no right to the actual monies owed by Hiniker immediately upon Piper's dissolution; they only possessed the right to receive these monies at a future date.

In essence, the petitioner seeks to expand Piper's obligation under the statute, which was only to ensure that this right to receive the monies was distributed to the shareholders "in accordance with their respective rights and interests." So long as Piper held no property in its own name and otherwise transferred its interest in the accounts receivable to its shareholders, we cannot say that Piper violated either the letter or the spirit of section 48-1-1007(a)(4) (repealed) by requiring payment of those monies into escrow for the benefit of its shareholders. Therefore, we conclude that Piper's dissolution complied with Tennessee Code Annotated section 48-1-1007(a)(4) (repealed).

Accordingly, in answer to the third question certified, Piper fully complied with the dissolution provisions of the Tennessee General Corporation Act, effective prior to January 1, 1988.

## QUESTION IV: NECESSITY OF DISSOLUTION PROVISION ADDRESSING UNFORESEEN FUTURE LIABILITIES AND FINAL ASSET DISTRIBUTION

The fourth question certified by the United States Court of Appeals is whether Tennessee's corporate statutes in effect prior to January 1, 1988, require the following provisions for the proper dissolution of a corporation: (1) a provision providing for unforeseen future liabilities, or (2) a provision ensuring the final distribution of its assets. Because we have already discussed the answers to this question in addressing the third question certified, we answer respectfully, and without further comment, that the General Corporation Act does not require that adequate provisions be made for unforeseen future liabilities to effect a proper dissolution under the statute. In addition, we answer that the General Corporation Act does require a final distribution of corporate assets to shareholders "in accordance with their respective rights and interests," a requirement that appears to have been satisfied under the facts as certified.

**QUESTION V: APPLICATION OF THE "TRUST FUND" DOCTRINE**

The final question certified by the United States Court of Appeals is whether Tennessee law permits the petitioner to use the "trust fund" doctrine against a dissolved, but then-solvent, corporation in the absence of other available remedies. The trust fund doctrine was developed by the courts primarily as an equitable rule to alleviate the harsh effects of the common law principle that all suits by creditors against a corporation are extinguished upon the corporation's dissolution. See Shields v. Clifton Hill Land Co., 94 Tenn. 123, 157, 28 S.W. 668, 676 (1894). Under this doctrine, as it has been applied in Tennessee, the creditors of an insolvent or dissolved corporation "are entitled in equity to payment of their debts before any distribution of corporate property is made among stockholders," and these creditors also possess "a right to follow its assets or property into the hands of [anyone] who is not a holder in good faith in the ordinary course of business." See Jennings, Neff & Co. v. Crystal Ice Co., 128 Tenn. 231, 236, 159 S.W. 1088, 1089 (1913).

The respondent alleges that the trust fund doctrine is unavailable to assist the petitioner in this case because he cannot establish that Piper was insolvent at the time of its dissolution, a necessary element to invoke the trust fund doctrine. The respondent's claim has some merit because virtually every case applying the trust fund doctrine in this State has involved an insolvent corporation.[7] Indeed, one case from this Court has specifically held that insolvency is a necessary requirement for the invocation of the trust fund doctrine against a corporation. See Rawlings v. New Memphis Gaslight Co., 105 Tenn. 268, 292, 60 S.W. 206, 212 (1900).

However, as originally developed by this Court in Marr v. Bank of West Tennessee, 44 Tenn. (4 Cold.) 471 (1867), the trust fund doctrine seems to have been designed to provide relief to creditors against corporations that were either insolvent or dissolved, but not *necessarily* both. Indeed, while Marr factually involved an insolvent corporation, its description of the trust fund doctrine was not quite as limited:

> The doctrine, that the assets of an insolvent or dissolved banking, or other monied corporation, constitutes a pledge or trust fund for the payment of the corporation debts, is now so firmly settled, upon the plainest principles of reason and justice, as well as authority, that it cannot be shaken, or brought into doubt. The assets of such an institution are always liable for its debts; and if they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. But, if they have been distributed among stockholders, or gone into the hands of others than bona fide creditors, or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust, in

---

[7] See, e.g., Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn. 391, 258 S.W. 776 (1924); Hicks v. Whiting, 149 Tenn. 411, 258 S.W. 784 (1924); Mechanics' Bank & Trust Co. v. Knoxville, S. & E. Ry. Co., 148 Tenn. 113, 251 S.W. 906 (1923); Voightman & Co. v. Southern Ry. Co., 123 Tenn. 452, 131 S.W. 982 (1910); McClaren v. Union Roller-Mill & Elevator Co., 95 Tenn. 696, 35 S.W. 88 (1895); Shields v. Clifton Hill Land Co., 94 Tenn. 123, 28 S.W. 668 (1894); Ottarson v. Dobson & Johnson, Inc., 58 Tenn. App. 408, 430 S.W.2d 873 (1968).

-12-

> favor of the corporation creditors; and a Court of Equity will follow the property, and
> enforce and compel its application to the corporation debts.

Marr, 44 Tenn. (4 Cold.) at 497. In fact, this Court has applied the trust fund doctrine for the benefit of creditors against a *solvent* corporation in at least one case. See Crystal Ice Co.,128 Tenn. at 233, 159 S.W. at 1089 (applying doctrine though the corporation possessed a net asset value of $200,000). Admittedly, while the doctrine as applied in Crystal Ice Co. is contrary to its usual applications, that case does demonstrate that the doctrine is not as limited as the respondent argues. Therefore, based on the authority of Crystal Ice Co., we conclude that the application of the trust fund doctrine in Tennessee is not limited to insolvent corporations.

However, while the trust fund doctrine could be applied in this state to solvent, but dissolved, corporations, we must still recognize that the General Corporation Act has significantly restricted the application of that doctrine in this case. The trust fund doctrine has not always been a creature of the common law in Tennessee, and significantly, the General Assembly codified this doctrine as part of the General Incorporation Act of 1875 to permit creditors to reach corporate assets through the subscribers of unpaid stock. See 1875 Tenn. Pub. Acts ch. 142, § 5 (codified originally at Tenn. Code § 1708 (Milliken & Vertrees 1884)).[8]

With the General Corporation Act of 1968, however, the General Assembly repealed many of the older 1875 corporate statutes, including the trust fund statute. See 1968 Tenn. Pub. Acts ch. 523 § 17.02. In its place, the General Assembly enacted section 48-1-1007(a)(3) (repealed), which again codified the essential principle, if not the particulars, of the trust fund doctrine, *i.e.*, that "'the [corporate] property must first be appropriated to the payment of the debts of the company, before any portion of it can be distributed to the stockholders.'" Hicks v. Whiting, 149 Tenn. 411, 453, 258 S.W. 784, 797 (1924) (quoting Fogg v. Blair, 133 U.S. 534, 541 (1890)). The enactment, repeal, and modified re-enactment of the essential principles of the trust fund doctrine demonstrate that the General Assembly is mindful of the doctrine and the role that it plays within the corporate statutory scheme.

Even with these principles in mind, however, the General Assembly nevertheless restricted the types of claims that creditors could assert against dissolved corporations to those that arose prior to the dissolution and were filed within two years of the dissolution. See Tenn. Code Ann. § 48-1-1013(a) (repealed). No other provision of the General Corporation Act permits creditors to reach corporate assets after the survival period, and although the legislature could have eliminated the two-year survival period altogether, cf. Cal. Corp. Code § 2010(a) (West 1990), it obviously chose not to do so. Therefore, it seems that the General Assembly has placed some degree of emphasis upon

---

[8] This statute provided that "[t]he amount of any unpaid stock due from a subscriber to a corporation shall be a fund for the payment of any debts due from the corporation; nor shall the transfer of stock by any subscriber release him from payment, unless his transferee has paid up all or any of the balance due on said original subscription." See also Shields, 94 Tenn. at 157-58, 28 S.W. at 676 (recognizing that this statute codified the trust fund doctrine from the common law, and stating that the "clear and plain meaning of the statute is that all unpaid stock, whenever subscribed, shall be a fund for the payment of all corporate debts, whenever created").

finality in the dissolution context, and as such, we must conclude that the legislature did not intend for the trust fund doctrine to have effect outside the confines of the General Corporation Act.

Further evidence that section 48-1-1013(a) (repealed) operates to limit the application of the trust fund doctrine within the survival period may be seen in the decisions of other courts interpreting similar statutory provisions. In <u>Hunter v. Fort Worth Capital Corp.</u>, 620 S.W.2d 547, 552 (Tex. 1981), for example, the Texas Supreme Court held that a substantially identical statute did not permit the trust fund doctrine to expand the limited survival period of the corporation following its dissolution. As that court candidly observed,

> no real purpose would be served by the enactment of Article 7.12, permitting suits against officers, directors, and shareholders of a dissolved corporation, unless the legislature intended for the statute to bar resort to the trust fund theory apart from the statute in order to enforce post-dissolution claims. To hold otherwise would violate the rule of statutory construction that the legislature is never presumed to do a useless act.

620 S.W.2d at 551.

A similar holding is also reflected in <u>Blankenship v. Demmler Manufacturing Co.</u>, 411 N.E.2d 1153 (Ill. App. Ct. 1980), a case in which the plaintiff sued the former shareholder of a dissolved corporation eight years after its dissolution. Rejecting a claim that the former shareholder was liable under the trust fund doctrine, the Illinois Appellate Court cited its version of the MBCA survival statute and held that

> [o]nce this [survival] period extending the existence of the corporation has ended, however, the corporation cannot sue or be sued. Consequently, we believe that the survival statute reflects a legislative intent to establish a definite point in time when a corporation ceases to exist. . . . In the absence of a statute permitting a cause of action which accrues after dissolution to be brought against a dissolved corporation, plaintiff has no valid cause of action against [the dissolved corporation]. Therefore, application of the trust fund doctrine to the assets held by [the former shareholder] is inappropriate.

411 N.E.2d 1156-57. The court also recognized that the "extension of the trust fund theory to cover plaintiff's claim would mean that the corporation could never completely dissolve but would live on indefinitely through its shareholders. We do not believe that this result would be in accordance with the spirit of the laws governing the dissolution of corporations." <u>Id.</u> at 1156. We agree with <u>Hunter</u> and <u>Blankenship</u> and conclude that their statements regarding the application of the trust fund doctrine within the MBCA are accurate reflections of Tennessee's law as well.

Accordingly, in answer to the final question certified, the trust fund doctrine has been applied to solvent corporations under Tennessee law, but the application of that doctrine in this case is

necessarily limited by the provisions of Tennessee Code Annotated section 48-1-1013(a) (repealed).

## CONCLUSION

To summarize our answers to the five questions certified by the United States Court of Appeals for the Third Circuit, we respectfully answer that the corporate statutes in effect before January 1, 1988, apply to determine the rights and remedies available against a corporation dissolved before that date and that section 48-1-1013(a) (repealed) applies to bar the petitioner's claims. We further answer that Piper Industries, Inc. did comply with the dissolution statutes in effect before January 1, 1988, which require provisions to ensure the final distribution of corporate assets, but which do not require a corporation to establish a reserve fund for contingent claims arising more than two years after the dissolution. Finally, we answer that while the trust fund doctrine has been previously applied in Tennessee to solvent corporations, its application in this case is necessarily limited by Tennessee Code Annotated section 48-1-1013(a) (repealed).

The Clerk is directed to transmit a copy of this opinion to the United States Court of Appeals for the Third Circuit and to the parties in accordance with Tennessee Supreme Court Rule 23(8).

Costs in this Court are taxed to the petitioners, Harry T. Kradel and Marilene Kradel.


_____
WILLIAM M. BARKER, JUSTICE

-15-