IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
April 6, 2022 Session

## BEVERLY GARDNER v. SAINT THOMAS MIDTOWN HOSPITAL

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
No. 17C2226        Joseph P. Binkley, Jr., Judge

———————————————————

### No. M2019-02237-SC-R11-CV

———————————————————

"When there is a conflict between the common law and a statute, the provision of the statute must prevail." *Graves v. Ill. Cent. R.R. Co.*, 148 S.W. 239, 242 (Tenn. 1912). That longstanding rule is the key to resolving this case, which pits a common-law rule governing vicarious liability claims against certain procedural provisions of Tennessee's Health Care Liability Act. The defendant in this case moved for summary judgment under the common-law rule. The trial court granted that motion, but the Court of Appeals reversed after concluding that application of the common-law rule would conflict with the Act. We agree that the Act necessarily implies an intent to abrogate the common-law rule in the circumstances of this case and affirm the Court of Appeals' decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Judgment of the Trial Court Reversed; Remanded to the Trial Court**

SARAH K. CAMPBELL, J., announced the judgment of the Court and delivered the opinion of the Court with respect to parts I(B), II, and III(B)–(E), in which SHARON G. LEE and HOLLY KIRBY, JJ., join, and an opinion with respect to parts I(A) and III(A), in which HOLLY KIRBY, J., joins. JEFFREY S. BIVINS, J., delivered the opinion of the Court with respect to part II(A), in which ROGER A. PAGE, C.J., and SHARON G. LEE, J., join, and an opinion dissenting in part, in which ROGER A. PAGE, C.J., joins. SHARON G. LEE, J., delivered a separate opinion.

Patrick M. Shegon and Amanda C. Hines, Montgomery, Alabama, for the appellant, Saint Thomas Midtown Hospital.

Luvell L. Glanton, Luvell L. Glanton, Jr., and Erik W. Benton, Nashville, Tennessee, for the appellee, Beverly Gardner.

# OPINION

## I.

We begin by introducing the two laws at issue in this case: the common-law framework for vicarious liability claims and the Health Care Liability Act.

### A.

The common-law framework governing vicarious liability claims in Tennessee is "well-established." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 105–06 (Tenn. 2010). "[A] principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Id.* at 105. And in most situations, "a plaintiff may sue a principal based on its vicarious liability for the tortious conduct of its agents without suing the agent." *Id.* That general rule applies "[e]ven where the agent's conduct is the sole basis for the principal's liability." *Id.* Thus, it is ordinarily the plaintiff's choice whether "to sue the agent, the principal, or both." *Id.*

But this Court has identified four situations in which the general rule does not apply and a plaintiff is precluded from exclusively pursuing a vicarious liability claim against the principal. *Id.* at 106. The first is "when the agent has been exonerated by a finding of non-liability." *Id.* The second is "when the plaintiff has settled its claim against the agent." *Id.* The third is "when the agent is immune from suit, either by statute or by the common law." *Id.* And most relevant here, the fourth—known as the operation-of-law exception—is "when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal." *Id.*

This Court shaped the contours of the operation-of-law exception in *Abshure*. The plaintiffs in that case brought a medical malpractice suit against a hospital and two physicians, one of whom was an emergency room physician. *Id.* at 100. The plaintiffs asserted vicarious liability claims against the hospital based on the conduct of the emergency room physician. *Id.* After the plaintiffs voluntarily dismissed their claims against the physicians, the hospital sought dismissal of the vicarious liability claims "on the ground that the plaintiffs' claims against its apparent agent, the emergency room physician, were barred" by a Tennessee Rule of Civil Procedure and a statute of repose. *Id.* at 100, 102.

Although this Court agreed that the plaintiffs' claims against the physician had been extinguished by operation of law, it nevertheless concluded that the operation-of-law exception did not preclude the plaintiffs from pursuing their vicarious liability claims against the hospital. *Id.* at 112. We clarified that this exception "is triggered only when a plaintiff belatedly attempts to amend its complaint to add a new vicarious liability claim against a principal after its claims against the agent have become barred by operation of

law." *Id.* at 111. It does not apply, however, "where the plaintiff has initially filed a vicarious liability claim against [a] principal, and the plaintiff's claims against the principal's agents are later extinguished by operation of law." *Id.* To extend the exception to the latter situation, the Court explained, "would be contrary to the traditional principle that plaintiffs may elect to sue the principal, the agent, or both." *Id.*

The *Abshure* Court gleaned these principles from its earlier decision in *Creech v. Addington*, 281 S.W.3d 363 (Tenn. 2009), and the Court of Appeals' decision in *Huber v. Marlow*, No. E2007-01879-COA-R9-CV, 2008 WL 2199827 (Tenn. Ct. App. May 28, 2008). *Abshure*, 325 S.W.3d at 110–11. In both of those cases, the plaintiffs "initially sued the principals but did not assert vicarious liability claims against them." *Id.* at 110. Later, after their claims against the agents were extinguished by operation of law—in *Creech* by the doctrine of res judicata, 281 S.W.3d at 376–83, and in *Huber* by a statute of repose, 2008 WL 2199827, at *3–4—the plaintiffs attempted to amend their complaints to add vicarious liability claims against the principals. *Abshure*, 325 S.W.3d at 111. The operation-of-law exception applied in those cases because "the plaintiffs' belated efforts to amend their complaints against the principals to add a vicarious liability claim" implicated the "traditional policy reason[]" for the exception—that "plaintiffs should not be permitted to engage in an 'encircling movement' against the principal when they cannot pursue a 'frontal attack' on the agent." *Id.* at 110–11 (first citing *Graham v. Miller*, 187 S.W.2d 622, 625–26 (Tenn. 1945); and then citing *Raines v. Mercer*, 55 S.W.2d 263, 264 (Tenn. 1932), *overruled on other grounds by Childress v. Childress*, 569 S.W.2d 816, 819 (Tenn. 1978)).

B.

*Abshure* was a medical malpractice action, but the claims in that case arose before the General Assembly began overhauling Tennessee's medical malpractice laws in 2008. They were therefore governed by the earlier, pre-amendment statutory scheme. 325 S.W.3d at 101. The General Assembly's 2008 amendments and others that followed—now known collectively as the Health Care Liability Act—established a number of new procedural requirements specific to health care liability claims. *See* Act of May 15, 2008, ch. 919, 2008 Tenn. Pub. Acts 1–4 (codified at Tenn. Code Ann. §§ 29-26-121, -122 (Supp. 2008)).[1]

Of particular importance here is the Act's presuit notice requirement. As initially enacted in 2008, that provision required persons asserting a potential claim for medical malpractice to provide "written notice of the potential claim to each health care provider *against whom the potential claim is being made* at least sixty (60) days before the filing of

---

[1] In 2011, the General Assembly replaced all references to "medical malpractice" with "health care liability." *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 826 (Tenn. 2015). The Act defines the term "[h]ealth care liability action" broadly to include "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1) (2012 & Supp. 2015).

a complaint." Tenn. Code Ann. § 29-26-121(a)(1) (Supp. 2008) (emphasis added). The General Assembly amended the provision in 2009 to require that presuit notice be given only to "each health care provider *that will be a named defendant.*" *Id.* § 29-26-121(a)(1) (Supp. 2009) (emphasis added).

At the same time it imposed the presuit notice requirement, the General Assembly also provided that, when a plaintiff complies with the presuit notice requirement, "the applicable statutes of limitations and repose shall be extended up to a period of ninety (90) days" with respect to "all parties and potential parties." *Id.* § 29-26-121(c) (Supp. 2008). The General Assembly tweaked that provision in 2009 by expanding the extension from 90 to 120 days and providing that the extension applies only to the provider that received presuit notice, not to all potential parties. *Id.* § 29-26-121(c) (Supp. 2009) ("When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of *one hundred twenty (120) days* from the date of expiration of the statute of limitations and statute of repose *applicable to that provider.*" (emphasis added)).

In the absence of an extension, the applicable statute of limitations in a health care liability action is generally one year from the date the cause of action accrued. *Id.* § 29-26-116(a)(1) (2012 & Supp. 2013); *see also id.* § 28-3-104(a)(1)(A) (Supp. 2015). If "the alleged injury is not discovered" within this one-year period, however, the limitations period is one year "from the date of such discovery." *Id.* § 29-26-116(a)(2). The statute of repose for health care liability actions is generally three years, except "where there is fraudulent concealment on the part of the defendant." *Id.* § 29-26-116(a)(3).

II.

That brings us to the facts and procedural history of this case. On May 8, 2016, Beverly Gardner had cervical spine surgery at Saint Thomas Midtown Hospital to repair a herniated disk. During the administration of anesthesia, Gardner allegedly suffered a pharyngeal laceration while being intubated. The physician at Saint Thomas proceeded with the surgery. Gardner was then transferred to TriStar Centennial Medical Center for an evaluation and was subsequently admitted to the rehabilitation unit to undergo intensive physical therapy, occupational therapy, and speech therapy. Gardner completed her physical therapy at Tristar Skyline Medical Center.

On April 25, 2017, Gardner gave Saint Thomas presuit notice of a potential health care liability claim as required by Tennessee Code Annotated section 29-26-121(a)(1) (2012 & Supp. 2015). Gardner did not provide presuit notice to any of Saint Thomas's employees or agents.

The one-year statute of limitations applicable to Saint Thomas began to run on May 8, 2016, when Gardner allegedly was injured, and ended on May 8, 2017. *See* Tenn. Code. Ann. § 29-26-116(a)(1). Because Gardner gave Saint Thomas presuit notice, Tennessee

Code Annotated section 29-26-121(c) (2012 & Supp. 2015) extended the statute of limitations applicable to claims against Saint Thomas by 120 days to September 5, 2017.

Gardner brought this action against Saint Thomas in the Davidson County Circuit Court on September 5, 2017. Her complaint alleged that Saint Thomas—acting through its employees or agents—negligently provided medical treatment to her. Gardner sued only Saint Thomas, not any of its employees or agents.

In September 2019, Saint Thomas moved for summary judgment under Tennessee Rule of Civil Procedure 56.02. Saint Thomas argued that Gardner's vicarious liability claims were barred under the common law. More precisely, Saint Thomas contended that the operation-of-law exception applied because, at the time Gardner brought her vicarious liability claims against Saint Thomas, any claims against Saint Thomas's agents had been extinguished by operation of law—i.e., the expiration of the one-year statute of limitations applicable to those claims.

Gardner opposed the motion on several grounds. First, she disputed whether the operation-of-law exception in fact precluded her vicarious liability claims. She argued that the exception was inapplicable because she did not attempt to belatedly amend her complaint to add vicarious liability claims against the principal, but instead included those claims when she initially filed suit. In Gardner's view, her vicarious liability claims were governed by the general rule that a plaintiff may bring vicarious liability claims against a principal without also suing the agent. Second, Gardner argued that application of the operation-of-law exception would conflict with the provision of the Health Care Liability Act extending the statute of limitations for claims against parties that receive presuit notice.

The trial court granted Saint Thomas's motion for summary judgment. As an initial matter, the trial court held that the statute of limitations applicable to any claims against Saint Thomas's agents began to run on May 8, 2016, and had expired by the time Gardner filed suit against Saint Thomas within the Act's extended statute of limitations.[2] The court then concluded that, because any claims against Saint Thomas's agents were barred by the statute of limitations at the time Gardner brought vicarious liability claims against Saint Thomas on September 5, 2017, the vicarious liability claims "f[e]ll within" the operation-of-law exception and thus were subject to dismissal.

The Court of Appeals reversed. *See Gardner v. Saint Thomas Midtown Hosp.*, No. M2019-02237-COA-R3-CV, 2021 WL 1235226, at *8 (Tenn. Ct. App. Apr. 1, 2021), *perm. app. granted*, (Tenn. Sept. 22, 2021). The court explained that Gardner's vicarious liability claims against Saint Thomas were timely under the Act given its 120-day extension of the statute of limitations. *Id.* at *3. After discussing the common-law framework that governs vicarious liability claims, the Court of Appeals explained that, if it were to apply

---

[2] Gardner argued in the trial court that the statute of limitations began running on a later date, but she did not renew that argument on appeal.

the operation-of-law exception to Gardner's "vicarious liability claims against [Saint Thomas] . . . , the result would likely be to bar her claims" since the "one-year statute of limitations had run on any direct claims against" Saint Thomas's agents or employees. *Id.* at \*6. The court determined that "application of the common law set forth in *Abshure* to the facts here conflicts with the outcome prescribed by" the Health Care Liability Act by "effectively shorten[ing] the time for pre-suit resolution of claims for vicarious liability cases brought solely against a principal" or forcing the plaintiff to give presuit notice to agents or employees the plaintiff did not intend to sue. *Id.* at \*7. The Court of Appeals held that, given this conflict between the Act and the common law, the provisions of the Act prevail. *Id.*

We granted review in this case to consider whether the trial court erred by granting Saint Thomas's summary judgment motion based on the common-law operation-of-law exception. We simultaneously granted review in *Ultsch v. HTI Memorial Hospital Corp.*, No. M2020-00341-COA-R9-CV, 2021 WL 1235683 (Tenn. Ct. App. Apr. 1, 2021), *perm. app. granted*, (Tenn. Sept. 22, 2021), to consider a similar question.

## III.

### A.

The broad question before us is whether the trial court correctly held that Gardner could not proceed with her vicarious liability claims against Saint Thomas. But that broad question includes a number of subsidiary issues. In arguing that summary judgment was improper, Gardner defends the Court of Appeals' conclusion that application of the operation-of-law exception conflicts with the Act. Yet she also contends that the common law does not bar her claims in the first place. Gardner maintains that the operation-of-law exception discussed in *Abshure* "is about the Court not allowing a party to make a vicarious liability claim after the party has previously failed to make one." She asserts that she "did not make a mistake in her pleadings like the plaintiffs in other cases wherein she would have to try an end run or encircling move around the statute of limitations."

Whether the operation-of-law exception applies in the circumstances of this case is a difficult question. This case is not on all fours with any of this Court's or the Court of Appeals' precedents considering the operation-of-law exception. Unlike the plaintiffs in *Creech* and *Huber*, cases in which the exception was *applicable*, Gardner did not seek to amend her complaint to belatedly add vicarious liability claims she failed to include initially. Rather, she included vicarious liability claims in her initial complaint. But this case is also distinguishable from *Abshure*, which held the exception *inapplicable*. Whereas the plaintiffs in *Abshure* brought their vicarious liability claims *before* the claims against the agents were barred, Gardner filed suit *after* the statute of limitations for any claims against Saint Thomas's agents had expired.

- 6 -

We need not resolve that difficult question to decide this appeal. That is because application of the operation-of-law exception to bar Gardner's vicarious liability claims would conflict with the Act. And in the event of a conflict, the Act must prevail. I therefore take no position on whether the operation-of-law exception in fact bars a plaintiff's vicarious liability claims in these circumstances, but instead assume for purposes of this opinion that it would.[3]

In her separate opinion, Justice Lee asserts that this assumption "sidesteps a foundational part of the analysis" and renders my discussion regarding the conflict between the common-law rule and the Act "merely an academic exercise." She is mistaken. When, as here, a case includes multiple potentially dispositive issues that do not bear on jurisdiction, a court has discretion to choose which of those issues to decide first.[4] For example, when resolving claims of qualified immunity in cases brought under 42 U.S.C. § 1983, courts may skip directly to the question whether the right at issue was clearly established without deciding whether there was a violation of that right in the first place. *See King v. Betts*, 354 S.W.3d 691, 706 (Tenn. 2011) (recognizing that the United States Supreme Court adopted this more flexible approach in *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)). As another example, the United States Supreme Court recently decided a copyright case on the basis of the fair-use exception without first deciding whether the material at issue was copyrightable. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021) ("We shall assume, but purely for argument's sake, that the entire [material] falls within the definition of that which can be copyrighted."). Although the dissent in that case criticized the majority for making that assumption, it did so only because copyrightability was the "principal question that [the Court was] asked to answer" and because the assumption "distort[ed]" the majority's fair-use analysis. *See id.* at 1211–12, 1214 (Thomas, J., dissenting).

Here, the principal question we are asked to answer is whether the Act abrogates the operation-of-law exception in the circumstances of this case. I assume that the operation-of-law exception would otherwise apply here in order to resolve that question, and nothing about this assumption distorts my analysis of that issue.

---

[3] In his separate opinion, Justice Bivins concludes that the operation-of-law exception applies in the factual circumstances of this case. That part of his opinion is joined by Chief Justice Page and Justice Lee and constitutes the opinion of the Court on that issue. A different majority of the Court—Justice Lee, Justice Kirby, and Justice Campbell—concludes in Parts III(B)–(E) of Justice Campbell's opinion that application of the operation-of-law exception would conflict with and therefore is abrogated by the Health Care Liability Act. Parts I(B), II, and III(B)–(E) of Justice Campbell's opinion constitute the opinion of the Court.

[4] If there is a question concerning whether the court has authority to decide the case at all, then that question necessarily must be resolved first. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (holding that federal courts may not assume jurisdiction for purposes of deciding the merits because such an approach would carry "the courts beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers").

B.

We review a trial court's decision on a motion for summary judgment de novo, without any presumption of correctness. *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 12 (Tenn. 2021). A motion for summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

Because this case involves the interplay between the common law and the Health Care Liability Act, it is worth reiterating the principles that guide our consideration of that issue. "Common-law principles and rules govern unless they have been changed by statute." *Hodge v. Craig*, 382 S.W.3d 325, 338 (Tenn. 2012). "[T]he General Assembly, subject only to constitutional limitations, has plenary power to alter the common law." *Id.* But we "presume that the legislature did not intend to change the common law," *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 751 (Tenn. 2001), and we will find that a statute has abrogated the common law only if it does so expressly or by necessary implication, *see In re Deskins' Ests.*, 381 S.W.2d 921, 922 (Tenn. 1964). Put another way, "the common law is not displaced by a statute, except to the extent necessarily required by the statute itself." *Kradel*, 60 S.W.3d at 751. "[W]hen there is a conflict between the common law and a statute," however, it is well settled that "the provision[s] of the statute must prevail." *Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000) (alterations in original) (quoting *Graves*, 148 S.W. at 242). This deference to the General Assembly is "constitutionally based . . . [and] rests on fundamental differences between the judicial and legislative process." *Hodge*, 382 S.W.3d at 338. When "the General Assembly has enacted statutes that clearly and definitively set boundaries on rights, obligations, or procedures, . . . 'it should be left to the legislature to change those boundaries . . . and to define new ones.'" *Id.* (quoting *Taylor v. Beard*, 104 S.W.3d 507, 511 (Tenn. 2003)).

C.

No one argues that the Act expressly abrogates the operation-of-law exception, so the only question before us is whether the Act necessarily implies or requires that the exception must be abrogated in the unique circumstances of this case. We hold that it does, because applying the exception here would directly conflict with and essentially nullify the provision of the Act that extends the statute of limitations when presuit notice is given.

It is undisputed that Gardner gave timely presuit notice to Saint Thomas as required by the Act and that, once notice was provided, the statute of limitations applicable to claims against Saint Thomas was automatically extended by 120 days. *See* Tenn. Code Ann. § 29-26-121(c) (providing that the "applicable statutes of limitations and repose *shall be extended*" when "notice is given to a provider" (emphasis added)). It is also undisputed that Gardner brought her vicarious liability claims against Saint Thomas within that extended statute of limitations. In short, Gardner did everything the Act required to bring a timely claim against Saint Thomas.

Applying the operation-of-law exception to bar Gardner's vicarious liability claims in these circumstances would directly conflict with the Act and frustrate its detailed procedural requirements. This conflict is best illustrated by identifying what Gardner would have had to do to avoid the exception. One option would have been to file her vicarious liability claims against Saint Thomas before May 8, 2017—when the one-year statute of limitations applicable to any claims against Saint Thomas's agents expired. But that option would effectively negate the Act's automatic 120-day extension of the statute of limitations as to Saint Thomas by forcing her to sue within the statute of limitations applicable to the agents. Another option would have been to provide presuit notice to Saint Thomas's agents, whom Gardner did not intend to sue, so that the statute of limitations applicable to those claims would be extended too. But that option cannot be squared with the Act's presuit notice provision, which requires only that notice be given "to each health care provider that *will be a named defendant*." *Id.* § 29-26-121(a)(1) (emphasis added). A final option would have been to provide presuit notice to Saint Thomas and its agents, and sue all of them. However, this last option is contrary to the general common-law rule that a plaintiff may choose to sue a principal, an agent, or both.

The bottom line is that, in the unique circumstances presented in this case, there is no way to simultaneously apply the operation-of-law exception *and* give full effect to the Act's provisions. The structure and operation of the Act thus necessarily imply that the operation-of-law exception must be abrogated. Because a conflict exists, we must give precedence to the legislature's policy choices reflected in the Act. After all, we are not permitted to "alter or amend statutes [or] substitute our own policy judgments for those of the General Assembly." *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013) (quoting *Britt v. Dyer's Emp. Agency, Inc.*, 396 S.W.3d 519, 523 (Tenn. 2013)).

This holding is a narrow one. It is not intended to abrogate the common-law framework for vicarious liability claims outside the health care liability context or in situations where its application to health care liability claims would not conflict with the Act. We hold only that, if application of the operation-of-law exception would bar a vicarious liability claim that is timely filed within the Act's extended statute of limitations solely because the statute of limitations had expired for any claims against the principal's agents, the exception must give way to the Act.

D.

Saint Thomas raises several arguments in defense of the trial court's decision, but they are unavailing.

Saint Thomas first accuses the Court of Appeals of erroneously holding that the 120-day extension of the statute of limitations in section 29-26-121(c) applies not only to the health care providers who received presuit notice, but also to each and every potential agent of those providers. But that argument reflects a misreading of the Court of Appeals'

decision. The Court of Appeals explained that Gardner "provided pre-suit notice to [Saint Thomas,] . . . thereby extending by 120 days the statute of limitations *applicable to her claim against [Saint Thomas]*." *Gardner*, 2021 WL 1235226, at *3 (emphasis added). The Court of Appeals did not hold that the statute of limitations was extended as to claims against any other person or entity. Nor could it. The Act is clear: it provides that "[w]hen notice is given to a provider . . . the applicable statutes of limitations . . . shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations . . . *applicable to that provider*." Tenn. Code Ann. § 29-26-121(c) (emphasis added).

Saint Thomas next points out that the General Assembly had already enacted the provisions requiring presuit notice and extending the statute of limitations by the time this Court decided *Abshure*. Saint Thomas contends that there is therefore "no merit to . . . [the] argument or the Court of Appeals' conclusion that the [Act's] pre-suit notice requirements abrogate the applicability of" the operation-of-law exception. True, the provisions of the Act on which we rely had been enacted by the time the Court decided *Abshure*. But they did not apply to the claims at issue in *Abshure* because those claims accrued and were filed years earlier—before those provisions were enacted. *See Abshure*, 325 S.W.3d at 100–01. Accordingly, we had no occasion in *Abshure* to consider the interaction of the common law with the Act.

Saint Thomas also contends that the Court of Appeals' decision is inconsistent with *Taylor v. Miriam's Promise*, No. M2017-01908-COA-R3-CV, 2019 WL 410700 (Tenn. Ct. App. Jan. 31, 2019), *perm. app. denied*, (Tenn. June 20, 2019) (not for citation). It is hard to see how that argument—even if correct—would help Saint Thomas. *Taylor* was designated "not for citation." Although the case may be cited to demonstrate a split of authority, *see* Tenn. Sup. Ct. R. 4(E)(2), it has no precedential value, *see id.* 4(E)(1) ("If an application for permission to appeal is hereafter denied by this Court with a 'Not for Citation' designation, the opinion of the intermediate appellate court has no precedential value."). And we of course are not bound "by a conclusion reached by the Court of Appeals" in any event. *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980).

This case is also distinguishable from *Taylor*. The plaintiff in *Taylor* sued both the principal *and the agent* but did not comply with the Act's presuit notice requirement as to the agent. *See* 2019 WL 410700, at *3–4. More importantly, the Court of Appeals did not identify or discuss the potential conflict between application of the operation-of-law exception and the provision of the Act extending the statute of limitations when presuit notice is given. Its analysis is therefore unpersuasive.

Saint Thomas further contends that there is no conflict between the common law and the Act because Gardner could avoid the operation-of-law exception simply by filing her complaint against Saint Thomas before expiration of the one-year statute of limitations applicable to any claims against Saint Thomas's agents. To be sure, nothing in the Act *prohibits* a plaintiff from filing an action within the one-year statute of limitations rather

than the extended statute of limitations, provided the plaintiff waits at least sixty days after giving presuit notice. But Saint Thomas's suggested alternative of filing suit within the one-year statute of limitations would for all practical purposes nullify the Act's clear directive that, when the presuit notice requirement is satisfied, "the applicable statutes of limitations and repose shall be extended" for 120 days. Tenn. Code Ann. § 29-26-121(c). On Saint Thomas's view, Gardner should have given presuit notice sixty days before May 8, 2017, (when the one-year statute of limitations expired) instead of sixty days before September 5, 2017, (when the extended statute of limitations expired) and filed suit by May 8, 2017, instead of September 5, 2017. The Act, however, clearly gives plaintiffs that comply with the presuit notice requirement an additional 120 days to file suit.

In the same vein, Saint Thomas asserts that there is no conflict between the common law and the Act because Gardner could have avoided the operation-of-law exception by sending presuit notice to the agents, so that the Act's extended statute of limitations would have applied to claims against Saint Thomas and its agents alike. Once again, nothing in the Act *prohibits* a plaintiff from sending presuit notice to an individual or entity the plaintiff has no intention of suing. But forcing a plaintiff to jump through the Act's presuit notice hoop solely to avoid application of the operation-of-law exception undoubtedly would interfere with the Act's carefully prescribed procedures. After all, the presuit notice requirement imposes obligations not only on plaintiffs, *see, e.g.*, Tenn. Code Ann. § 29-26-121(a)(1)–(4) (detailing the content the notice must include and the manner of service and proof of compliance), but also on the parties to whom presuit notice is given, *see id.* § 29-26-121(a)(5) (requiring party to whom notice is given to "provide written notice to the potential claimant of any other person, entity, or health care provider who may be a properly named defendant"). The legislature determined that these additional procedures were necessary only when a party "will be a named defendant." *Id.* § 29-26-121(a)(1). Saint Thomas's proposed alternative would conflict with this determination by effectively imposing additional requirements the legislature did not impose.

Finally, Saint Thomas argues that—at least in cases involving apparent agents who are not a principal's employees—allowing a plaintiff to sue the principal within the Act's extended statute of limitations without also suing the agents will frustrate the Act's intent to facilitate presuit investigation and settlement. According to Saint Thomas, unless a non-employee agent is made a party to the suit, it is unable to communicate with that agent about a plaintiff's claims because of rules prohibiting ex parte communication with other health care providers.

This argument is largely beside the point. As Saint Thomas acknowledges, even if we give effect to the operation-of-law exception in the circumstances presented here, a plaintiff could still sue the principal without also suing the agents as long as presuit notice is provided to the agents or suit is filed within the one-year statute of limitations. It follows that a decision reversing the Court of Appeals would not necessarily address the concern Saint Thomas identifies. Presuit notice would allow a defendant to obtain *medical records* from an agent, *see id.* § 29-26-121(a)(2)(E), but the sort of ex parte communications Saint

Thomas envisions would still require a judicial order, *see Willeford v. Klepper*, 597 S.W.3d 454, 472–73 (Tenn. 2020) ("[D]efendants in healthcare liability actions [are allowed] to petition trial courts for qualified protective orders for ex parte interviews with non-party treating healthcare providers, but . . . the manner of disposition of such petitions [is left] to the sound discretion of trial courts."). And if a plaintiff sues the principal within the one-year statute of limitations without giving the agents presuit notice, then the principal would be no better off in terms of its ability to obtain information from the agents. Thus, even if the policy concern Saint Thomas identifies is a valid one, it provides no reason to reverse the Court of Appeals.

E.

The dissent maintains that we must apply the operation-of-law exception if "the common law principle and the statutory provisions can coexist." In the dissent's view, the operation-of-law exception can coexist with the Act—and therefore is not abrogated by necessary implication—because a plaintiff can avoid dismissal of its claims against the principal by sending presuit notice to the agent as well as the principal or filing suit within the one-year statute of limitations.

We have never adopted the "cannot coexist" standard on which the dissent relies. To be sure, abrogation by necessary implication is a high bar: a "necessary implication" is one that is "so strong in its probability that anything to the contrary would be unreasonable." *Necessary Implication*, Black's Law Dictionary (11th ed. 2019). But that standard is met here because allowing the Act and the operation-of-law exception to coexist—that is, depriving a plaintiff who wishes to sue only the principal of the Act's mandatory extension of the statute of limitations or forcing that plaintiff to give presuit notice to parties that will not be named defendants—would be unreasonable.

*     *     *

The Health Care Liability Act's presuit notice provisions necessarily imply an intent to abrogate the operation-of-law exception in the unique circumstances of this case. Because the operation-of-law exception does not bar Gardner's claims, the Court of Appeals correctly reversed the trial court's decision to grant Saint Thomas's motion for summary judgment. We therefore affirm the decision of the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to Saint Thomas, for which execution shall issue if necessary.

_____
SARAH K. CAMPBELL, JUSTICE